Adam Quirk, please call the case. 311-016-Yvonne M. Johnson, account by Scott Piles v. Charles E. Bailey, echoed by Jeanne Schreiner. Please proceed. May it please the Court, Counsel, my name is Scott Piles, I represent Yvonne Johnson. This appeal essentially has three issues that are presented in the appellant's brief. The first issue is that the trial court abuses discretion in allowing an in-trial amendment to a Rule 216 request to admit that involved the causation of the medical bills that were related in the case. The second issue was the allowance of the trial court to use photographs that, one, the opinions regarding those photographs were not disclosed in a Rule 213 request, or the defendant's discovery deposition. And two, the trial court abuses discretion in allowing photographs that did not have a proper foundation to, one, be shown in the jury, and two, to be admitted into evidence. Are the photos in evidence? Yes. I mean, are they in the record? I'm sorry. The photos were blow-ups, and I put the miniature size of the photographs in the appellant's brief. The posters were big, and we did not submit those. The two photos that are on the subject matter are in my appellant's brief in the appendix. You just simply shrunk? I shrunk down. These were huge posters. They had blown up, and I shrunk them down and put them in the brief. I'm sorry to interrupt your announcement. And the third issue is the admission or the allowance of the trial court to allow testimony of Officer Graven regarding a pre-existing injury suffered by the plaintiff that she advised him at the scene of the collision. The first issue that I want to address is the Supreme Court Rule 216 allowance by the trial court. In essence, prior to the trial, the plaintiff in the case sent a request to admit regarding the reasonable necessariness of the medical bills and the medical records, whether or not the foundation had been done, and also asking to admit that the medical bills were incurred or were as a result of the accident. And they were done in 1A and 1B. The defendant admitted 1A sections regarding the medical record foundations and so forth and the reasonableness of the amounts of bills. They denied whether or not each of the requested medical expenses were in fact related to the motor vehicle collision. That response was sent back signed by the defendant's counsel alone, unsworn and without the signature of the party. I think that both the trial court and the parties acknowledged that the 216 response, as it was done, was deficient. I moved during the course of the trial to have all of the facts deemed admitted. This was the second day of the trial. Initially, the defendants said that no, there was a sworn statement that it was a tip to the request. I needed to call the office. It was just missing. After the defendant's counsel called her office, she realized that in fact there had never been a sworn response done. She advised the court that she had prepared the response. She was going to send a signature page to the client to have him sign and that had never occurred. And then she then asked the court for leave to have her client sign one in court and attach it to the Rule 216 response. The court, in looking at whether or not to allow the defendant to have an extension of time to submit a properly formatted 216 response, and the process that's involved in that is of course guided by the EnvisionPoint case decided by the Supreme Court. In EnvisionPoint, the court went through analysis that says that in determining whether or not good cause exists for an extension to file a response, only the conduct of the party asking for the extension is to be considered. Whether or not, for example, somebody was out of town during the time and they weren't available to sign, that would probably be a good cause for an extension. Or if there was a record that needed to be reviewed and they didn't have access to it in response, I think that those are pretty valid reasons for an extension for a request to submit. And in this particular case, there really was no explanation offered other than the fact that I forgot to mail the response to the defendant himself. Now, the trial court went beyond in looking at the conduct or the reasons for the request from the defendant. The inquiry went further. The inquiry was to me, well, you have your doctor here and my doctor was in the courtroom at the time to testify. Why are you prejudiced by this? And my response at the trial court was, I could have sent the doctor home and I could have, frankly, spared a testimony fee from the doctor if the requests were going to be deemed admitted. Then the next question was, would it be an injustice for me to have all of these requests submitted? And that was the inquiry that the trial court made in determining whether or not he was going to give the defendants an extension in the midst of the trial to submit a proper response to our 216 request. And the VisionPoint case is very clear that that inquiry went beyond what was to be looked at. The only conduct that needed to be looked at was why the extension should be granted. Was there good cause for the extension? Frankly, from what I surmised at the trial, there was no good cause for the defendant and the judge was attempting to balance my prejudice against whether or not he should allow the extension. And the VisionPoint case is very clear. You don't look at what the cause or whether or not there's going to be inconvenience or prejudice in looking at whether or not there should be an extension. Only the conduct that's involved with the case. And the next question maybe is, well, okay, you know, this was a not guilty in the case. Maybe the jury wasn't. Well, one of the issues in the case is whether or not, you know, a plaintiff suffers as a proximate cause of a person's negligence. Do they suffer an injury? Do they incur damage? And the requests that were talked about here all related to the damages in the case. Whether or not the ones that were denied that would have been deemed admitted, whether or not the medical expenses were in fact caused by the accident. If those had been admitted, I would not have had to have called my witness. I could have simply read the request to the jury that the jury admitted, or the defendants admitted that Dr. Morozak's charges were related to the accident and down the line. The other question is, well, but I had my witness there. He denied my motion to deem allowed an extension. And I called my witness, and I essentially put in, after two hours of testimony from the doctor or cross-examination, essentially all the facts that were in the admission. Now, I guess there are two responses to that. Number one, whether or not that the jury was going to believe some of the testimony that Dr. Morozak or what, I would not have needed to call that witness if the court had followed vision point. And therefore, that's two things. I would have saved, or the client would not have incurred an expense for the calling of the witness. And number two, in terms of what is separating the wheat from the chaff in a civil case, if there's not really much of a contest about that she in fact suffered these injuries as a result of this collision, then why am I calling the witness when I have to just admit it? And I should have been given the cost of that witness by the trial court for having to call that witness to prove up things that were denied in the request to admit. So I think the court abuses discretion in, one, how the trial court evaluated whether or not the defendant had good cause in allowing a 216 response to be admitted in this case. And number two, in allowing them to amend their response, the trial court should have at least awarded us the fees for having the doctor testify who essentially proved up everything that was in the request to admit anyway. And I know it's popular to put the plinkets to their proofs, but in cases such as this... Well, that's the laws, huh? Pardon me? It's not just popular, it's what the law is. That's true, Judge, but if something is truly not contested, and if you look at the trial transcript in this case, and I understand that the plinket has a burden of proof, if you looked at the cross-examination, there really wasn't too much dispute that this lady had gone to a chiropractor and had suffered the injury following the accident. Now there was some cross-examination, but if you look at the test, there really wasn't too much of a contest. Essentially, we had to put the doctor on, and even though the medical expenses and so forth are there, we're going to deny it, we're going to make you call the doctor. And I think that the rule, in talking about Rule 216, I think that the defendant had other horses to look at in terms of where they were going with the case, which takes me to my second argument about the photographs. Now, in this particular case, the defendant was a retired police officer, and how this accident took place is that he was stopped at a gas pump at the Casey's in Shanahan, Illinois. My client had went into the Casey's gas station. As she was driving in, the pumps were facing her. She saw all the pumps were filled. She was going to go through the parking lot, exit, and go to another gas station. As my client was going through the gas station parking lot, the defendant, who had stopped and pumped gas, pulled out and struck the driver's side of my client's car. After this collision took place, he came back, I don't know if it was the next day or if it was several days later. He brought his car, and he had his girlfriend's car, brought to the same gas station. And he had lined him up where his truck was, and he attempted to place his girlfriend's car where he thought that the plaintiff's car was, and he took photographs. And those are the two photographs that are attached to our appendix brief. Two issues with regard to those photographs. Number one, there was never a disclosure made pursuant to Supreme Court Rule 213 that the defendant was going to testify that those photographs truly and accurately depicted where the cars were in the scene of the collision in the day of the accident. They weren't disclosed. He didn't testify to that either, did he? He tried to. He couldn't testify whether one of the vehicles located in the photograph were in the position of the plaintiff's vehicle, right? That's correct, because he didn't see the plaintiff's car until after the car was in front of him, and he struck the car. That's my point exactly. And if he didn't know where the plaintiff's vehicle was, how could he possibly have an accurate photograph or stage an accurate photograph showing where the plaintiff's car was in the position that he did if he didn't know where the plaintiff's car was before the accident took place? It did show the scene of the gas station, and it did show some of the normal traffic flow, didn't it? The two photographs that I applied show there's different views. There's a front view and a back view of two vehicles showing the gas pumps. Now, there's the photograph, and I know the trial court said, well, I'm going to let this one in because it shows the view. However, there was another photograph that showed the gas station without the cars in it. So it isn't like that the photograph that was admitted into evidence that I objected to was keeping something, because there was other photographs that I did not object to that are mentioned in the defendant's brief that did show the gas station, but they didn't have the cars in it. So these photographs, which were admitted into evidence, one was shown, and the trial court said, well, this is misleading, but I'm going to let the other one in because it shows the layout of the gas station. There were other photographs that were there that showed the layout of the gas station. My position is this. First of all, the defendant should have disclosed, either in his discovery deposition or in his 213 disclosure, and granted, I'm not suggesting that somehow he is a controlled expert witness. Even though he is a retired police officer, I'm not expecting him to have some big detailed layout. However, the subject matter of the opinion should have been it. He should have said, I'm going to talk about my observations of the accident. I'm also going to testify that the photographs I took reasonably reconstruct the positions of the cars at the time of the accident. Did he use these photos at the deposition? They did. And we talked about the photos. However, at the deposition, though, there was never a foundation laid for him. He said, well, I took these photographs after the... I don't know why he essentially took the photographs. Maybe to give to his attorney to kind of lay out where things were. And that's fine. But in the deposition, though, there was never an opinion given that these photographs truly and reasonably accurately showed the scene of the accident. That opinion was never disclosed. And frankly, if you look at the trial transcript, the defendant could never point to anything in the discovery deposition that indicated that. The second issue with regard to the photographs, and again... But this was a person at the accident. So he's describing the accident. Right, but he didn't see the plaintiff's car until after it was in front of him. So he didn't know where the plaintiff's car was in relation. That was a trial testimony, right? Pardon me? That was a trial testimony. Well, his testimony was... He went through the photographs and said, well, if you see this, this is where the car was. It was only until I cross-examined him and impeached him with his deposition that he said, well, yeah, I guess maybe I don't know where the plaintiff's car was. In fact, the matter is, the trial court let that picture in. That picture went back to the jury room. The jury had that photo, that staged photo, that there was no foundation for and there was no disclosure for, back in the jury room while they were deliberating. That was five. That was five. Five. I think four was... There was two. Four and five. One was in, one was out. Four was the angle, five was... It was the front-on. It was the front-on where both of them were facing. Correct. Well, that... The four wasn't there, it went back to the jury. But four they saw. They saw exhibit four in the book. Right. That was during the opening. You know, and I objected to them using the photographs because I didn't think they could lay a foundation for them anyway. I objected then, I objected at the motion of limine, I objected at the time that they were admitted. And the trial court said, well, I guess this one is misleading, but I'm going to let this other one in because it shows, you know, maybe it'll show some of the scene. But there were other photographs that were there that could achieve that purpose. Having the car in the position that it was, frankly, a foot or two away from the defendant's car, when the testimony from the plaintiff, who's really the only witness to know where she was driving, said if she was much farther away, that she kind of went around the car and gave the car a much wider berth. Having that photograph back in the jury room, when there was no foundation laid for it, was extremely prejudicial. Thank you. Thank you, Counsel. Counsel, you may proceed. Chief Justice, may I please report, Counsel? My name is Dr. Kelly. I'm the appellee defendant in this matter, Mr. Charles Bailey. I respectfully request that you affirm the decisions of the trial court in this matter in their entirety. Your Honors, this case is not about improper photographs or untimely disclosures, nor is it about an abuse of the rules of discovery. This case is about the appellant trying to circumvent the trier of fact. We're here today because the appellant was disgruntled with the weight that the jury gave to the evidence produced at trial. Each issue raised by the appellant, both in the briefs and here at oral argument, I think go to the weight of the evidence and not necessarily its propriety. In my time before you, I will attempt to discuss all of the four following points. First, the use of Exhibit 4 and the admission of Exhibit 5 into evidence was not an abuse of discretion and did not substantially affect the outcome of the trial. Second, Mr. Bailey's foundational opinions for those photographs were properly and timely disclosed. Also, Mr. Bailey's opinions regarding the points of impact, which was not addressed during oral argument but was addressed in the briefs, was properly disclosed and was nothing more than lay person opinions. Third, the trial court's decision to allow amendments to Rule 216 requested that it was proper and did not affect the outcome of the trial. And finally, fourth, that Officer McRaven's testimony constituted an admission of the plaintiff and also the plaintiff opened the door to that testimony. The appellant, and I'm sure you're all aware of the pertinent facts of this, a few key facts that I do want to highlight about the actual underlying motor vehicle accident is that the appellant plaintiff when pulling into the Casey's General Store and noticing that the gas station pumps were full, in order to exit the parking lot, the layout and the direction from which she entered required necessarily that she travel in a westerly direction around stationary gasoline pumps to her left. Also to her left was Mr. Bailey stopped pumping gasoline. So the appellant is traveling in a westerly direction, to her left is Mr. Bailey. Mr. Bailey is also facing a westerly direction. The layout of the property necessarily entails that had no accident occurred, the appellant would have had to pass Mr. Bailey in the gas pumps and do what would amount to a left hand turn to then reach the exit. And I believe that can be shown by the appendix to appellant's brief. As to my first point, I'd like to address the photographs issue first because I believe that is the real need of the argument here. The trial court did not abuse its discretion in allowing the use of Exhibit 4 or the admission of Exhibit 5 into evidence. As the appellant correctly noted in her amount of case law, relevant demonstrative evidence is permissible if its probative value outweighs the danger of unfair prejudice. The admission of photographs which can mislead the jury can be an abuse of discretion, but the party seeking the reversal bears the burden of demonstrating to this court that such admission was substantially prejudicial and affected the outcome of the trial. The appellant cites this court to its 1984 holding in J.L. Simmons v. Firestone Tire and Rubber Company for the proposition that it was reversible error to allow even the use of and also the admission of Exhibit 5 in front of the jury. A couple of key things about J.L. Firestone, or sorry, J.L. Simmons v. Firestone involved a plaintiff who had suffered a back injury slipping on the floor of a tire manufacturing plant on a piece of plastic and the issue there was that because of all the chemicals used in tire manufacturing the floor had become discolored, the plastic was discolored, the plaintiff in that case could not see the plastic on the floor, it slipped and fell. The defendant in that case tried to use photographs that showed the floor of the manufacturing plant clear of any of those chemicals, clear of any of that discoloration and the trial court therein held and this court affirmed that those photographs were not in a substantially similar condition, that's why they were excluded. Unlike J.L. Simmons v. Firestone and Tire and Rubber Company, in this particular underlying matter both parties testified with regards to Exhibit 4 and 5 that as far as the layout of the premises and the direction and flow of traffic those photographs did accurately depict and were substantially similar to the premises of the Casey General Store on the date in question. Don't you have other pictures though that were introduced that show the same thing only without vehicles? Correct. And why would these with vehicles that are obviously staged or placed there why would they be used at all if you have other ones that actually show a clearer picture of what the Casey's parking lot looks like? In Number 5 actually one method of ingress and egress appears to be blocked by the car. So wouldn't a photo without these actually be better demonstrative evidence of the layout of the parking lot? I think that goes to the weight the jury would give to the particular pictures. I think that Exhibit 5 was of demonstrative value in that it showed not necessarily the position of the cars but the dimensions of two cars the path of travel that they would necessarily have to take to get around the gas pump to the exit. But more importantly and as Appellant's Counsel pointed out Appellant had the opportunity to cross-examine Mr. Bailey at length concerning these photographs and it was drawn out on cross-examination that in fact the cars as pictured in both Exhibit 4 and Exhibit 5 may not have been in the same position. He was also facing a westerly direction. He did not know how close the Appellant was to his vehicle as they came around. So it goes to the weight of that actual picture. In terms of those pictures first I'd like to point out that there's never been an issue raised that Exhibit 4 or Exhibit 5 wasn't relevant in aiding the jury to visualize the ingress and egress of the station. That issue has never been raised in any of the briefs. The discrepancy obviously is the positioning of the vehicles in the photographs. So the question for this Court to answer according to the standard is has the Appellant met the burden of proof that the use of Exhibit 4 or the admission of Exhibit 5 substantially affected the outcome of the trial? And I would urge this Court in answering that question to look specifically at the record and at the Appellant's brief, the record at 323 to 328 and the Appellant's brief at 17 to 18 closely because it shows the following things. The issue in the underlying motor vehicle accident was whether Mr. Bailey pulled from the gasoline pumps into the Appellant or did the Appellant in trying to maneuver around Mr. Bailey pull right in front of Mr. Bailey. Mr. Bailey in cross-examination admitted multiple times that the cars in the picture were not or he wasn't aware of where the Appellant's vehicle was so he couldn't testify as to where the whether or not the sedan in the picture was closer or farther to the curb or to the truck. However, both parties did testify that everything else in the photograph as it was and nobody made an issue as to whether that wasn't demonstrative or wasn't relative. The Appellant agreed with the layout as depicted in the exhibits and if all that wasn't enough, the Appellant herself rectified any prejudicial effect in Exhibit 5, the exhibit that was admitted into evidence because the Appellant herself was asked to take a pen and draw where she thought her car was. She did just that. It's not shown in the appendix to the Appellant's brief, but in the blow-up, which we're not talking about giant posters, we're talking about 16x20 photographs, in that particular picture she took a pen herself and she said, well, my car wasn't here, it was actually here, and she drew a line of where she thought her car traveled, which was substantially farther apart from where the car was pictured, the Seydan was pictured in Exhibit 5. So what this Court has to answer is whether or not the admission of that photograph substantially affected the outcome of the trial, and I would say that goes to the weight of the evidence, that goes to the province of the jury, which obviously this Court gives great deference to, because it was the Appellant herself that corrected any prejudicial effect of this photograph by drawing that line and saying, nope, that's not where my car was. My car was actually in fact over here, making Exhibit 5, in fact, more relevant and more useful to the jury in trying to decide who was at fault for this accident. I would like to point to the case that was cited by the Appellant in his brief, that it's the admission of the photographs, which tend to mislead the jury, that constitute an abuse of discretion. Exhibit 4 was never admitted. As to whether or not a foundation was laid, I believe if you look at the record of pages 313 and 318-319, Mr. Bailey did testify that he took the photographs, that the photographs were a true and correct representation of the  that the property, the ingress, the egress, that those contents were in a substantially similar condition, and the Appellant herself did agree. Exhibit 4 was never admitted. It was merely used in front of the jury. And Exhibit 5 did not about 16 by 20, so maybe I'm a terrible judge of distance, but about the size of your kids football picture on your wall. Exhibit 4 was used in front of the jury and was later not admitted, denied admission, based on the fact that it could mislead, and Exhibit 4 was the view behind, where it showed the positioning of the cars. And any prejudicial effect that Appellant raises in her appeal regarding merely the use of Exhibit 4 was rectified on the record, and you can see it pages 17 and 18, because the Appellant goes a great length to show just how at length Appellant's counsel cross-examined Mr. Bailey regarding the position of his vehicles. There was no confusion as to the fact that those vehicles may or may not have been that close. And then Exhibit 5 was later used in which the Appellant drew the line herself. The Appellant also contends in her reply that it was the admission of Mr. Bailey's foundational opinions concerning the photographs which prejudiced the Appellant. The Appellant takes issue with the fact that Mr. Bailey did not disclose in his 213 responses that he would testify regarding the foundation of the photographs, but ignores the discovery deposition in which the photographs were produced. The standard for determining whether a violation of 213 disclosure should require striking that opinion at trial can be found, as cited in the Appellant's brief in the case of Clayton v. Cook. There are several factors for this Court to consider, and those include surprise to the adverse party, prejudicial effect, nature of the testimony, diligence of the adverse party, a timely objection, and the good faith of the party calling the witness. Applying those factors to the instant case, there's no unfair surprise or prejudicial effect. It was no surprise that Mr. Bailey was going to testify that he took those photographs and that those photographs depicted the Casey's General Store. The nature of the testimony was merely to lay a foundation, and the foundation was that that was how the General Store  cars would come in and go out of the entrance and exit to the station. Thank you. And the fact that Mr. Bailey disclosed them at his discovery deposition well in advance of trial demonstrates both the good faith of the party calling the witness and the lack of diligence on the adverse party. Briefly, to touch on my final points concerning... I'll just focus on the request to admit, as that was what Appellant focused on in oral argument. The request to admit, the amendments to the request to admit, here's why. The amendments to the request to admit did not substantially affect the outcome of the underlying trial, and that's because if you look at the actual requests to admit which are found in the appendix to the appellant's brief, the B section of each request requires Mr. Bailey to admit that the appellant's injuries were reasonably related to the occurrence. It's very different than saying the appellant's injuries were reasonably related to Mr. Bailey's any actual omission on the part of Mr. Bailey. Even had the trial court deemed all of those to be admissions, the jury never reached the issue of whether or not the appellant was injured because the jury found in favor of Mr. Bailey on the issue of liability or who caused the accident. So, while we maintained that it was a proper use of the trial court's discretion to allow the amendment on the basis of the case, it really doesn't matter because the jury never reached the issue of whether or not the appellant was injured, and had those requests been deemed admissions, they would only have the effect of admitting that she was injured by virtue of the occurrence, not by virtue of Mr. Bailey's conduct. For those reasons, I ask that you please affirm the decisions of the trial court in this matter. Thank you, counsel. Thank you. Counsel, you may proceed. One of the elements in a personal injury element is that we have to also show that the plaintiff was injured as a result of the accident. For the defendant to now say that while the request to admit they want to sidestep the issue, say, well, the jury never reached that because it was a not guilty. One of the things that has to be proven, however, in a case is whether or not the injury suffered by the plaintiff was possibly caused by the defendant's negligence. That's one of the elements that have to be proved. The jury simply could have felt, well, Officer McRaven had testified that she had a prior back injury. Maybe that was what her injury was, and maybe there's other medical treatments related to that. Therefore, I'm going to discount that injury. Therefore, if she wasn't damaged, then the plaintiff shouldn't recover. That goes to the third element, which is the defense officer being allowed to testify without any expert testimony whatsoever that Ms. Johnson had had a prior back injury. The defendant argues, well, that's an admission, and I opened the door because I had the officer talk about statements that the defendant had made about whether or not he had stopped his vehicle. If we look for a moment at what Mr. Officer McRaven testified, he was giving evidence that this plaintiff had suffered a prior injury. Under Boykin, unless there's a defense expert or expert testimony linking the prior injury to what happened in our accident, it's not admissible. Whether or not it comes from Officer McRaven, or it comes from a doctor, or it comes from another witness who was aware of the prior injury, that evidence does not come in. The defense did not have that expert. They didn't have any testimony from any of the treaters that linked that up. That testimony should have not been allowed. That segues in because the jury had heard that she had a prior injury. That then comes back to the fact that, well, maybe she wasn't injured at all in this accident, despite what was in the request to admit, and then that's why the jury found not guilty. Clearly, the trial court did not follow the process in the Supreme Court case of Visionpoint in analyzing whether or not the request to admit should have been allowed. If we go to the photographs, the defense has conceded that there were other photographs that showed the layout of the scene. The photograph 5, which was allowed in, showed a position of the cars that was not accurate. And the position of the cars was extremely important in terms of where the plaintiff was when the defendant began to pull out his vehicle. If you look at the photograph, the cars were real close together. That they handed back in the jury room. I'm sorry. Ms. Scheimer said that all of that goes to the weight of the issue, not the admissibility. And, of course, you're stopping a step prior to that and saying it's just not admissible at all. Well, that's right. Can you respond to her statement? Sure. In terms of the weight, that, well, first of all, we have to assume that there was a proper foundation for the photographs laid in the first place, and there wasn't. He clearly could not lay a foundation that that photograph truly and accurately presented the position of the cars. So, the photographs, there was never a foundation even laid to get it into evidence. As to the fact of the weight, that, well, they're okay to be admitted, and they should just go to the weight. Well, the court never gave an instruction about concerning the photograph. It says, ignore the positions of the cars. We're just putting this in because we want to show what the gas station looked like, despite the fact that there are other photographs that show what the gas station looked like in the layout. If it goes to the weight, the position of the cars is extremely important in terms of what happened in the case. Thank you. If the plaintiff came in the gas station and went right up the defendant's car and made a quick turn, well, maybe the jury felt, well, she got too close to the defendant's car. And that's what the photographs show. They show the car real close. That's not what the testimony is. That's not what the evidence in the case is. The defendant doesn't know where the plaintiff's car was. There was no way he could ever position the cars in the first place. That's why there was never an opinion regarding the foundation laid in the 213 disclosure because he couldn't give the opinion. And yes, I was surprised when the defendant came up and said, oh yes, these photographs truly inaccurately depict the positions of the cars in the scene of the collision. Because in his discovery deposition, he said he didn't know where the plaintiff's car was. He only saw it until it was in front of him. And you impeached him with that. I did impeach him with that, Your Honor. And I agree. But he also gave the opinion in his testimony that those photographs did truly inaccurately and the trial court let them in anyway. The jury had that photograph back in the jury room despite what the defendant said. My point exactly. The court, to a certain extent, by ruling that the photograph was a true, by allowing it into evidence, showing it was a true and accurate description of the scene of the collision, was essentially telling the jury, well, I'm believing the defendant in his first testimony. I'm going to let the photograph in even though he admitted on cross-examination he didn't know where the plaintiff's car was. Counselor, your time is up. I ask you to reverse the decision of the trial court in this case. Thank you. Thank you, Counselor. The court will take this case under advisement and rule with dispatch.